**John BELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67153.**

Court of Criminal Appeals of Texas, En Banc.

July 10, 1985.

Paul Tatum, Nacogdoches, for appellant.

Herbert B. Hancock, Dist. Atty. and Martha J. Sullivan, Asst. Dist. Atty., Nacogdoches, Robert Huttash, State's Atty., Austin, for the State.

OPINION

MILLER, Judge.

This is an appeal from a conviction of aggravated assault. Punishment was assessed by the jury at five years confine-

ment in the Texas Department of Corrections.

On November 26, 1979, appellant fired four shots from a .22 calibre semi-automatic rifle into the occupied trailer home of his long time, across-the-street neighbor. One bullet passed completely through the trailer. No injuries were sustained. Appellant was convicted of aggravated assault pursuant to V.T.C.A. Penal Code, §§ 22.01(a)(2) and 22.02(a)(4).[1] In his first ground of error, appellant contends the trial court erred in failing to grant his requested charge upon the lesser included offense of reckless conduct. We agree and reverse the judgment of the trial court. This is a case of first impression.[2]

## I.

V.T.C.A. Penal Code, § 22.05 (Reckless Conduct) provides:

"(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

(c) An offense under this section is a Class B misdemeanor."

Appellant asserts that reckless conduct is a lesser included offense of aggravated assault, citing *Gallegos v. State*, 548 S.W.2d 50 (Tex.Cr.App.1977). In *Gallegos*, the defendant was convicted of reckless conduct and contended on appeal that the

trial court erred in failing to charge the jury on the lesser included offense of assault. In rejecting the defendant's contention, we stated:

"V.T.C.A. Penal Code, Secs. 22.01 to 22.-04, provide that reckless acts that cause bodily injury constitute assault, but that reckless acts that fall short of injuring another are excluded. V.T.C.A. Penal Code, Sec. 22.05 (Reckless Conduct) applies to those acts that fall short of injuring another. Accordingly, reckless conduct is a lesser and included offense to assault under the Penal Code. This is exactly the reverse of [the defendant's] contention." (Emphasis deleted.)

*Id.* at 50, 51. The State argues the statement in *Gallegos* that "reckless conduct is a lesser and included offense to assault" is overbroad and mere dictum. We agree.

▇▇▇ Whether one offense bears such a relationship to the offense charged so as to constitute a lesser included offense under Art. 37.09, V.A.C.C.P., is an issue which must await a case by case determination. *Williams v. State*, 605 S.W.2d 596 (Tex.Cr. App.1980); *Ex parte McClelland*, 588 S.W.2d 957 (Tex.Cr.App.1979); *Hazel v. State*, 534 S.W.2d 698 (Tex.Cr.App.1976); *Day v. State*, 532 S.W.2d 302 (Tex.Cr.App. 1975) (Opinion on Rehearing). A given section of the Penal Code may define more than one way in which an offense can be committed. An allegation that an offense has been committed in one way may include a lesser offense, while an allegation that the offense was committed in another way would not include the lesser offense.[3]

---

1. V.T.C.A. Penal Code, § 22.01(a)(2) provides: "(a) A person commits an offense if the person:

   . . . . .

   (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;"
   V.T.C.A. Penal Code, § 22.02(a)(4) provides: "(a) A person commits an offense if the person commits assault as defined in Section 22.01 of this code and the person:

   . . . . .

   (4) uses a deadly weapon."

2. A similar issue was presented, but not addressed, under the prior penal code in *Alexan-*

*der v. State*, 160 Tex.Crim. 460, 274 S.W.2d 81, *cert. denied*, 398 U.S. 872, 75 S.Ct. 108, 99 L.Ed.2d 686 (1954).

3. For example, robbery may be committed either by causing bodily injury or by threatening imminent bodily injury. V.T.C.A. Penal Code, § 29.02(a). Each of these forms of robbery includes, as a lesser offense, a form of assault that the other does not include. An allegation of robbery by threat includes the lesser offense of assault by threat; it does not include the offense of assault by causing bodily injury. Conversely, an allegation of robbery by causing bodily injury would include the lesser offense of assault by causing bodily injury, but it would

*Martinez v. State,* 599 S.W.2d 622 (Tex.Cr. App.1980). V.T.C.A. Penal Code, § 22.01(a) provides three different ways in which the offense of assault may be committed. Thus, *Gallegos,* supra, should not be read to hold that reckless conduct is a lesser included offense of each form of assault under V.T.C.A. Penal Code, § 22.01(a)(1), (2) or (3). The statement in *Gallegos* is simply too broad and bypasses analysis.

In addressing appellant's contention, we begin with the statutory definitions of a lesser included offense set forth in the Code of Criminal Procedure. Article 37.09, V.A.C.C.P. provides:

"An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense."

Each definition of a lesser included offense in Art. 37.09 is stated with reference to "the offense charged," and specifically states the manner in which the lesser included offense differs from the offense charged. *Day v. State,* 532 S.W.2d 302 (Tex.Cr.App.1976) (Opinion on Rehearing). In the instant case, the "offense charged" alleged in pertinent part that appellant:

"... did then and there knowingly and intentionally use a deadly weapon, to wit: a firearm, and did then and there threaten George Smith with imminent bodily injury by the use of said deadly weapon." [4]

The State contends that reckless conduct is not a lesser included offense of the offense charged in this case under any of the provisions of Art. 37.09.[5] With respect to subdivision (1) of Art. 37.09, the State specifically asserts that proof of danger of *serious bodily injury*[6] is not established by the same or less facts than proof of a threat of imminent *bodily injury.*[7] While this contention *may* have merit with respect to simple assault as denounced by V.T.C.A. Penal Code, § 22.01(a)(2), it is not persuasive when the assault is aggravated

---

not include the offense of assault by threats. *Martinez,* supra, at 624.

4. In his third ground of error appellant asserts the trial court erred in failing to grant his motion to dismiss the indictment. Appellant points out that the State failed to allege the culpable mental state of intentionally or knowingly in conjunction with the forbidden conduct of threatening another with imminent bodily injury, instead opting to plead it in conjunction with the aggravating feature of using a deadly weapon. Our disposition of appellant's first ground of error renders it unnecessary for us to consider appellant's contention, but we note this is not a model indictment. But see, *McElroy v. State,* 528 S.W.2d 831 (Tex.Cr.App.1975) (Opinion on Rehearing).

5. The State correctly asserts subsections (2), (3) and (4) of Art. 37.09 do not apply in this case. With regard to subsection (2) we note that the offense charged includes the element of "threatening another with imminent *bodily injury*" while reckless conduct requires proof of placing

another "in imminent danger of *serious bodily injury.*" Since serious bodily injury is not a less serious injury than bodily injury, and the danger of serious bodily injury is not a less serious risk of injury than the threat of imminent bodily injury, subsection (2) of Art. 37.09 does not apply. Likewise, subsection (3) does not apply because, although a less culpable mental state suffices to establish reckless conduct, the mental state is not the only difference between reckless conduct and the offense charged. Subsection (4) is inapplicable because there are no allegations of an attempt to commit the offense.

6. V.T.C.A. Penal Code, § 1.07(a)(34) provides: "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

7. V.T.C.A. Penal Code, § 1.07(a)(7) provides: "'Bodily injury' means physical pain, illness, or any impairment of physical condition."

by the use of a deadly weapon pursuant to V.T.C.A. Penal Code, § 22.02(a)(4).

Under Art. 37.09(1), supra, reckless conduct is a lesser included offense of aggravated assault as charged in the instant case if it is established by proof of the same or less than all the facts *required to establish commission of the offense charged.* Proof of the factual elements of the offense is "required" to establish "commission" of the offense charged.[8] *Sanders v. State,* 664 S.W.2d 705, 709 (Tex.Cr.App.1982) (Clinton, J. concurring and dissenting on rehearing). Thus, in the case at bar, in order to establish the commission of the offense charged, the State was required to prove beyond a reasonable doubt that:

(1) A person

(2) intentionally or knowingly [9]

(3) threatened another with imminent bodily injury

(4) by [knowingly and intentionally] [10] using a deadly weapon.

The elements of reckless conduct as defined by V.T.C.A. Penal Code, § 22.05(a), are:

(1) A person

(2) recklessly

(3) engages in conduct

(4) that places another in imminent danger of serious bodily injury.

We now turn to consider whether the State established commission of the lesser included offense of reckless conduct by proof of the same or less than all the facts required to establish the offense charged, aggravated assault by the use of a deadly weapon. In this case, when the State established the higher culpable mental state of intent or knowledge, it necessarily established the lower culpable mental state of recklessness. V.T.C.A. Penal Code,

§ 6.02(e); *Briceno v. State,* 580 S.W.2d 842 (Tex.Cr.App.1979). The precise issue thus becomes whether proof of threatening another with imminent bodily injury *by using a deadly weapon* constitutes proof that the actor engaged in conduct that placed another in imminent *danger* of serious bodily injury.

The term "danger" is not statutorily defined: it should therefore be "read in context and construed according to the rules of grammar and common usage." See, Code Construction Act, Art. 5429b–2, § 2.01, V.A.C.S. Webster's New Collegiate Dictionary 285 (1981) defines danger as "exposure or liability to injury, pain, or loss ..." Danger is also defined as "jeopardy; exposure to loss or injury; peril." Black's Law Dictionary 355 (5th ed. 1979). V.T.C.A. Penal Code, § 1.07(a)(11) statutorily defines the term "deadly weapon" and provides:

"(11) 'Deadly weapon' means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

■ Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished by the use of a deadly weapon, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when a deadly weapon is *used* in the commission of an offense. It follows, therefore, that proof of threatening another with imminent bodily injury by the use of a deadly weapon constitutes proof of

---

**8.** The proper relationship between offenses contemplated by Art. 37.09, V.A.C.A.P., concerns *elements* of the two offenses, not "evidence adduced at trial." See *Sanders v. State,* 664 S.W.2d 705 (Tex.Cr.App.1982).

**9.** Although the indictment in this case did not allege the required culpable mental state of intentionally or knowingly in conjunction with the forbidden conduct of threatening another

with imminent bodily injury, it is clear that the State was required to prove it in order to establish the commission of an assault pursuant to V.T.C.A. Penal Code § 22.01(a)(2).

**10.** The State was required to prove a knowing and intentional use of the deadly weapon in this case because the indictment so alleged.

engaging in conduct that places another in imminent danger of serious bodily injury.

We hold that under Art. 37.09(1), V.A.C.C.P., reckless conduct is a lesser included offense of "the offense charged" in the instant case because it is established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon.

## II.

Merely because a lesser offense is included within the proof of a greater offense, however, does not always warrant a jury charge on the lesser offense. *Aguilar v. State*, 682 S.W.2d 556 (Tex.Cr.App.1985). In *Royster v. State*, 622 S.W.2d 442 (Tex. Cr.App.1981) (Opinion on rehearing), Judge Tom Davis, writing for the Court on rehearing, stated the Texas rule:

"Thus, in determining whether a charge on a lesser included offense is required, a two step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." (Citation omitted.)

We have employed this two step analysis in recent opinions dealing with the necessity of a charge on a lesser included offense. See *Aguilar*, supra; *Wallace v. State*, 679 S.W.2d 1 (Tex.Cr.App.1983); *Parr v. State*, 658 S.W.2d 620 (Tex.Cr.App.1983); *Denison v. State*, 651 S.W.2d 754 (Tex.Cr.App. 1983); *Daniels v. State*, 633 S.W.2d 899 (Tex.Cr.App.1982); *McKinney v. State*, 627 S.W.2d 731 (Tex.Cr.App.1982) (Opinion on rehearing); *Bravo v. State*, 627 S.W.2d 152 (Tex.Cr.App.1982); *Johnson v. State*, 623 S.W.2d 654 (Tex.Cr.App.1981).

As discussed previously, the lesser offense of reckless conduct was included within the proof necessary to establish the offense charged, aggravated assault by the use of a deadly weapon. Article 37.09(1), V.A.C.C.P. The question remaining in the two step analysis is whether there is some evidence that appellant, if guilty, is guilty only of the lesser included offense of reckless conduct. A recitation of the facts thus becomes necessary.

### A.

This offense stemmed from what has been characterized as a "neighborhood argument" arising in the Pleasant Hill Community of Nacogdoches County on November 25, 1979. The record reflects that appellant owned a small grocery store, commonly called "Mr. Bell's Grocery," located on Farm-to-Market Road 2664. Appellant also owned a trailer house located on FM 2664. Appellant and his wife used both the grocery store and the trailer house "back and forth as a home" because the grocery store lacked facilities at the time.

The record further reflects that the complainant, George Smith, lived with his wife and small child in a trailer house across the road (FM 2664) from appellant's trailer house. The complainant's trailer house sat "kind of on a little hill" approximately "three or four car lengths" off of FM 2664, and was visible from the road. Appellant and complainant had been across-the-street neighbors for six or seven years prior to the offense. Their trailer houses were approximately seventy-five yards apart.

According to defensive testimony, around 5:30 on the Sunday afternoon of November 25, 1979, the complainant and others began passing by Mr. Bell's Grocery in their vehicles and "speeding and spinning their tires and racing their motors ... right at the business." Around 6:30 that same afternoon, appellant began receiving harassing telephone calls, the bulk of which were made by the complainant's brother, Ronnie Smith. Prompted by this activity, appellant summoned his son-in-law, Robert Wiggins, because "he seen there was going to be trouble." Wiggins, who lived nearby, drove to the grocery store accompanied by his friend, Billy Gilliam.

When Wiggins and Gilliam arrived at appellant's store around 8 o'clock, appellant was again on the phone with the ha-

rassing caller. Appellant continued to receive harassing calls throughout the evening—Gilliam testified he counted seventeen while he was present—which were described as "just cursing him out and threatening him and so forth," spaced apart "just long enough to hang up and call again." The telephone conversations were audible to those present at the grocery store because appellant used an amplifying device on the phone. Witnesses testified that during the course of the calls appellant was threatened in two particular respects. One threat was to put appellant across the road with his mother and father, which the record reflects is the location of the Pleasant Hill Cemetery. The other threat was "to do the same thing to [appellant's] trailer that happened to [appellant's] store," which the record reflects had burned down two years before. Concerned by the implication that his trailer house might also burn down, appellant sent his wife and Wiggins to check on it. Later, appellant sent his wife alone to check on the trailer. Neither check revealed any activity.

Complaining witness, George Smith, testified that he and a friend, Randy Randall, were passing by appellant's store around 9 o'clock that evening when they saw appellant next to the road with a pistol in his hand.[11] After they passed by the store and traveled a short distance down the road, they heard a gunshot. Nothing was hit. Complainant and Randall proceeded to Randall's house and called the sheriff's office.

Officer Bud Cain responded to complainant's call and went to appellant's grocery store. There he talked with appellant and his wife, observed a number of the continuing harassing phone calls, and even spoke with the harassing caller on one occasion. Cain then went to Randall's house where he talked with Randall and complainant. He then returned to appellant's store and spoke with appellant a second time. No arrests were made. Officer Cain testified that as he was leaving the store the second time appellant stated: "[w]hen you leave that's when the war starts." Officer Cain then left the scene and returned to town.

Around one o'clock in the morning of November 26, 1979, complainant and his family left Randy Randall's house and went to their trailer home. The record reflects that complainant had no outside lights at his trailer house, but at the time of the instant offense did have the kitchen lights on and the curtains open. As the three were preparing for bed, complainant's wife, Nita Smith, heard a vehicle approaching. She looked out the window and saw appellant's truck coming up the road. Appellant was driving. The truck stopped right in front of the complainant's trailer while still on FM 2664. Nita called the sheriff's office. The truck then proceeded up the road, turned around, and returned to again stop in front of the complainant's trailer.

The complainant was talking to Officer Cain on the telephone when "the shooting started." Complainant testified that appellant's truck was stopped on FM 2664 right in front of the complainant's trailer house. The driver's side of the truck was facing complainant's trailer, and appellant was the driver. Complainant testified the shots came from the direction of appellant's truck. The record reflects four bullets struck the complainant's trailer, with one bullet passing completely through. No injuries were sustained. Appellant was arrested shortly thereafter and charged with the instant offense.

At trial, appellant denied intentionally shooting into the complainant's trailer. Appellant testified that he remained concerned that his trailer would be burned so he and his wife drove by to check over his property. Appellant's property covered about "three football fields" along FM

---

11. When asked on cross-examination how many times he had driven in front of appellant's store that day, complainant conceded "I think I went to the dump once and I went past it going to Randy [Randall]'s brother's house." As it turned out, Randall's brother was not at home and it was upon the return to Randall's house that they observed appellant at the road with a gun.

2664, just across the street from the complainant's trailer. According to appellant, they slowly drove by the property once, turned around, and were slowly driving by again when appellant's wife thought she saw someone on appellant's property. Appellant decided "[w]ell, I'll shoot a couple of rounds off and maybe we'll get some movement out of it." At that time, appellant's property was on the passenger side of the truck and complainant's trailer was on the driver's side of the truck. Without getting out of the truck or opening the vehicle door, appellant put the gun out of the window on the driver's side of the truck and fired the shots "up in the air"; as appellant's wife worded it—"to scare, if it was someone down there." Relative to the shooting incident appellant testified:

"A. ... I put the gun out the window, fired it, and checked to be sure that I was firing in a position so it wouldn't hit. One thing I didn't want to hit was anything over here.

"Q. John, did you aim that gun?

"A. No, sir. I didn't aim it, I just stuck it out the window, but I still was—

"Q. Thought you was shooting—

"A. Certainly I was shooting—yeah, I was shooting directly up in the air where it would not hit anything, yes sir.

"Q. ... John, did you think you were shooting towards the trailer?

"A. No, sir. I had no intention of shooting towards the trailer.

"Q. Were you looking over that way—

"A. No, sir.

"Q. —when you shot?

"A. No, sir. I wasn't even looking at the trailer. I was looking back the other way previously—

.    .    .    .    .

"A. —and this shooting was actually kind of a, uh, quick reaction type of thing, just a—

"Q. Uh, were you looking to see if anyone run from the orchard when you—

"A. Oh, —

"Q. —shot?

"A. Yes, sir.

"Q. And did you see anybody run?

"A. No, sir. I didn't see, but my wife was over on that side—

.    .    .    .    .

"A. —blocking, you know, part of my view that way.

"Q. Had you looked over there to see if there was any lights on at the George Smith's trailer?

"A. No, sir. I wasn't paying any attention to his trailer. I was interested in mine.

.    .    .    .    .

"A. I didn't notice any lights.

"Q. You wasn't looking over that way and hadn't been looking over that way John, at all?

"A. No, sir.

"Q. How many shots did you fire, John?

"A. Four or five approximately. I didn't count them. I just—

"Q. Well, did you shoot them off fast, slow or what?

"A. Uh, I just pulled the trigger at random

.    .    .    .    .

On cross-examination, appellant reiterated his contention that the shooting of the complainant's trailer was unintentional. During cross-examination, the following colloquy occurred:

"Q. Okay. And when you shot that gun out the window, the four or five times that you talked about, you shot it out the window on your side. You were driving, is that correct?

"A. That's correct.

"Q. Just stuck it out the window and shot it, is that correct?

"A. Not in the position that your holding it, no.

.    .    .    .    .

"A. It was in an upward position.

"Q. Okay. Were you looking in the direction you were shooting it?

"A. Was I looking in the direction?

"Q.  Yeah.

"A.  In other words, your question is, did I know where each bullet went to?

"Q.  No, sir.  I'm just asking the question—

.      .      .      .      .

"Q.  —of whether or not you were looking in the direction you were shooting the gun?

"A.  Well, I shot up.  I looked—

.      .      .      .      .

"A.  —and placed the gun to shoot it into the air so it would not hit anything.

"Q.  So, you intentionally didn't want to his [sic] the trailer, the Smith's trailer, is that your testimony?

"A.  Yes, sir.  I'm saying I didn't intentionally point to hit anything.

"Q.  Okay.  My question is this.  You intentionally tried not to hit the Smith's trailer, is that your testimony earlier?

"A.  No.  My intention was not to hit anything.

"Q.  All right.

"A.  Any property.  Anything.

"Q.  And you were looking—you had problems on the other side of the road and you shot on this side of the road—

"A.  Yes, sir.

"Q.  —is that your testimony?

"A.  Well, my wife was on the other side and you don't shoot across your wife."

### B.

■ Article 37.08, V.A.C.C.P., provides that in a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense but guilty of any lesser included offense.  If evidence from any source raises the issue of a lesser included offense, the charge must be given.  *Moore v. State*, 574 S.W.2d 122 (Tex.Cr.App.1978).  A defendant's testimony alone is sufficient to raise the issue.  *Roberts v. State*, 590 S.W.2d 498 (Tex.Cr.App.1979); *Briceno v. State*, 580 S.W.2d 842 (Tex.Cr.App.1979).

As noted in *Thompson v. State*, 521 S.W.2d 621 (Tex.Cr.App.1974), "it is ... well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted." (Citations omitted.)  It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the lesser included offense.  *Moore*, supra, at 124.

In the recent case of *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984), the defendant was convicted of murder and contended on appeal that the trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter.  The court of appeals, applying the two-part test set forth in *Royster*, supra, held that the evidence did not raise the issue of a reckless killing and the trial court did not err in failing to instruct the jury on involuntary manslaughter.  *Lugo v. State*, 653 S.W.2d 513 (Tex.App.—Corpus Christi 1983).  The court of appeals held that since the defendant denied pointing the rifle at his victim, and testified that he believed the gun was unloaded, he negated any claim that he perceived the danger.  Thus, the court of appeals held that the defendant's testimony negated the mental state required to establish involuntary manslaughter.

We reversed the judgment of the court of appeals in *Lugo* and remanded the case for a new trial.  We initially noted that the jury, as the trier of fact, may accept or reject all or a part of a witnesses' testimony, even the defendant's.  Thus, we rejected the notion that a defendant's testimony can negate the issue of a lesser included offense and held that we will consider *all* the evidence presented at trial in order to determine whether an instruction on a lesser included offense should be given.  Applying these concepts to the facts in *Lugo*, we held:

"The sole issue at trial concerned appellant's intent.  The State's position was

that its evidence showed that appellant intentionally pointed the rifle at his wife knowing it was loaded and then knowingly and intentionally shot her. We find that the jury as trier of fact could have reasonably rejected the appellant's testimony that he was unaware that the rifle was loaded; it could have reasonably believed the witness' testimony that the appellant cocked and pointed the rifle at the victim and thus could have inferred from such action that the appellant knew the rifle was loaded; and it also could have reasonably believed appellant's testimony that he did not intend to kill his wife. Accordingly, the jury could have reasonably concluded that appellant's action in pointing a loaded rifle at his wife in an attempt to persuade her to relinquish the keys to a car constituted a conscious disregard of 'a substantial and unjustifiable risk.'"

The rationale of *Lugo* is applicable to this case. As in *Lugo*, the sole issue at trial concerned appellant's state of mind. The appellant's properly requested charge on reckless conduct encompassed the mental state of recklessness. V.T.C.A. Penal Code, § 6.03(c) provides:

"(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

The thrust of the State's evidence adduced at trial was that appellant intentionally fired the shots into the trailer with the intent to threaten complainant with imminent bodily injury, or at least that appellant was aware that his conduct was reasonably certain to cause that result. The thrust of appellant's testimony was that he shot the gun four or five times ("Certainly I was shooting"), but that he did not intend to

shoot at the complainant's trailer or its occupants. Indeed, appellant testified that he intentionally pointed the gun elsewhere to avoid hitting anything or any property on complainant's side of the road.

As pointed out in *Lugo* and cases cited therein, the jury, as the sole trier of fact, was entitled to believe all or part of the conflicting testimony proffered and introduced by either side. The instant jury was thus free to believe appellant's testimony that he did not intentionally shoot at the complainant's trailer, and thus did not intend to threaten the complainant with imminent bodily injury. The physical evidence in this case shows, however, that the complainant's trailer was struck by *four* bullets fired from appellant's gun. The jury, therefore, could quite reasonably reject appellant's testimony that he checked to be sure and was pointing the gun away from the trailer when he fired the gunshots, and justifiably believe that he did point the gun at and in the direction of the trailer. Thus, by selectively believing some of the proffered and introduced evidence adduced at trial and rejecting other proffered and introduced conflicting evidence, the jury could have concluded that appellant was not acting with intent to threaten imminent bodily injury, but was nonetheless pointing the gun at or in proximity of the trailer creating a risk that another would be placed in imminent danger of serious bodily injury.

The evidence in this case shows that appellant was well aware of the location and proximity of the complainant's trailer; for six or seven years he had lived a scant seventy-five yards away. Appellant testified that he wasn't paying any attention to the complainant's trailer and he didn't notice any lights. Of course, appellant was aware that this was the complainant's home and the instant offense did occur in the early morning hours. Appellant's testimony raises an issue over whether he *was* aware that the trailer was occupied at the time of the instant offense. The State's witnesses' testimony was that the lights in the trailer were on and the curtains were

open and that the trailer was easily visible from the road. Thus, by selectively believing the conflicting proffered and introduced evidence of obvious occupancy, the jury could have concluded that appellant was aware of but consciously disregarded the substantial and unjustiable risk that the actual circumstances existed, i.e., that the trailer was occupied. Furthermore, the jury could reasonably conclude that appellant was aware that shooting "up" on the same side of the road where complainant's trailer sat "kind of on a little hill" entailed the risk that another would be placed in imminent danger of serious bodily injury and, in conscious disregard of that "substantial and unjustifiable risk," appellant engaged in the repeated voluntary discharge of a semi-automatic weapon from a public road in an inhabited area.

There was no direct evidence that appellant knowingly and intentionally fired the weapon at the complainant or his trailer. The jury, as the trier of fact, was entitled to infer from the evidence that appellant acted intentionally, and indeed they did. By selectively believing the conflicting proffered and introduced evidence, however, the jury was entitled to infer that appellant acted in conscious disregard of the substantial and unjustifiable risk that the result of his conduct would occur.

■ We find the evidence raises the issue of reckless conduct under the "guilty only" test of *Royster*, supra, and *Aguilar*, supra. We hold that it was error for the trial court to refuse appellant's requested charge on reckless conduct, leaving the jury no alternative but to convict for aggravated assault or to acquit.

The judgment of the trial court is reversed and the cause is remanded.

McCORMICK, J., dissents.

TEAGUE, Judge, concurring.

John Bell, appellant, was tried and convicted by a jury on an indictment that attempted to accuse him of committing an aggravated assault on George Smith, the complainant, by using a deadly weapon, to-wit: a firearm, to threaten Smith with imminent bodily injury. The jury also assessed punishment at five (5) years' confinement in the Department of Corrections.

Appellant does not challenge the sufficiency of the evidence to sustain his conviction. Therefore, it is adequate to state that the State's cause of action arose after appellant, believing that he had been the victim of telephone harassment by other persons, including the complainant, fired at least four shots from a rifle into the trailer home of the complainant, in which the complainant, his wife, and small child were located. No injuries were sustained by anyone.

The majority opinion correctly orders appellant's conviction reversed because the trial court erred when it refused to submit an instruction to the jury on the lesser included offense of reckless conduct, as provided by the provisions of V.T.C.A., Penal Code, Section 22.05.

The offense of reckless conduct, as provided by Sec. 22.05, supra, is committed if a person recklessly engages in conduct that places another in imminent danger of serious bodily injury. The offense of reckless conduct substantively differs from the offense of aggravated assault by the use of a deadly weapon, see V.T.C.A., Penal Code, Sec. 22.02(a)(4), only in that it is not committed with the culpable mental state of intentionally or knowingly, but rather with the culpable mental state of recklessly. See V.T.C.A., Penal Code, Sec. 6.03.

If a threat of imminent bodily injury is made with a deadly weapon, it necessarily is a threat of imminent serious bodily injury. Consequently, reckless conduct may be a lesser included offense of aggravated assault by threatening imminent bodily injury by the use of a deadly weapon.

In this instance, the record makes it apparent that it was the intent of the prosecuting attorney to elevate the offense of assault to aggravated assault. See *post*, however.

Appellant's facts of what occurred, as to the shooting, is that when he and his wife

were patrolling their property in his truck for possible intruders, appellant's wife called to appellant's attention that she thought that she had seen an unwanted intruder in their orchard, after which appellant stopped his truck and fired four to six shots from his rifle into the air in an attempt to frighten off the possible unwanted intruder. Appellant testified that he was not trying to hit anyone when he fired his rifle. After firing his rifle, appellant and his wife did not see any further movement in the orchard, so they returned to their country store, where appellant was soon thereafter arrested. It was later established that bullets from his rifle struck an occupied trailer house, in which the complainant, his wife, and small child were situated.

Appellant's testimony that he was merely firing his gun in the air to try to scare off a possible unwanted intruder negates any intent or knowledge that he wanted to injure or kill anyone. The fact that the bullets struck an occupied trailer only shows that the firearm was pointed in the direction of other people. A person, unquestionably, creates a substantial and unjustifiable risk that someone might be seriously injured when, without aiming, he fires a gun in the direction of an occupied residence. The disregard of this risk constitutes a gross deviation from the standard of care that an ordinary person would exercise. I find that the facts that were presented by appellant nicely fit the definition of the term "recklessly." See V.T.C.A., Penal Code, Section 6.03(c). Consequently, and pursuant to Art. 37.09(3), V.A.C.C.P., the majority opinion correctly holds that appellant was entitled to an instruction on the lesser included offense of reckless conduct, and because the trial court erroneously refused to give the jury that instruction the majority opinion correctly holds that such was reversible error. Also see Sec. 22.05, supra; *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984). Cf. *Aguilar v. State*, 682 S.W.2d 556 (Tex.Cr.App. 1985).

The main reason that I write, however, is because of the seriousness of appellant's third ground of error, in which he asserts that the trial court erred in overruling his motion to quash the indictment. If the appellant's motion to quash should have also been sustained, it is the responsibility and duty of this Court to say so. The majority opinion, however, although acknowledging that "this is not a model indictment," declines to address the contention, thus leaving the trial judge, the prosecuting attorney, and appellant to wonder whether the appellant's motion to quash should have been granted. Because I find that the trial court also erred in overruling appellant's motion to quash the indictment, this is another reason why I concur in the reversal.

The indictment in this cause alleges in pertinent part that appellant "did then and there knowingly and intentionally use a deadly weapon, to-wit: a firearm, *and* did then and there threaten George Smith with imminent bodily injury by the use of said deadly weapon." (My emphasis.) What offense has been charged by this indictment? As easily observed, the indictment first alleges an aggravating element *and* then attempts to allege the predicate assault offense, but in alleging the latter it fails to allege a culpable mental state, which is a required element of the offense of assault. See Sec. 22.01, supra. Also see Sec. 6.02(b), supra.

Section 22.02, supra, the aggravated assault statute, when plainly read, clearly states: "A person commits [the] offense of [aggravated assault] *if* he [first] commits an assault as defined in Section 22.01 of this Code and he [then commits some aggravating element, as provided in Sec. 22.-02]". (My emphasis.)

The majority opinion advises us to "But see, *McElroy v. State*, 528 S.W.2d 831 (Tex. Cr.App.1975) (Opinion on Rehearing)." I have done so and, after having done that, and notwithstanding the fact that I am now more convinced than ever that the dissenting opinion that was filed by Judge Roberts in that cause, regarding the validity of the indictment in that cause, should have been

**446**

adopted by the then three judge majority of this Court, the indictment in that cause is clearly distinguishable from the one in this cause. Notwithstanding my thoughts, a comparison of the indictment in *Ex parte Garcia*, 544 S.W.2d 432 (Tex.Cr.App.1976), with the one in this cause, shows the obvious difference between the two indictments, and why *Garcia*, supra, does not control.

One of the ways that a person might commit the offense of aggravated assault is that if he "intentionally or knowingly threatens another with imminent bodily injury by the use of a deadly weapon." See V.T.C.A., Penal Code, Sections 22.01(a)(2) and 22.04(a)(4). In this instance, the State, contrary to the statutory scheme and in violation of the recommended rule that the course that would best guarantee the legal sufficiency of an indictment is ordinarily to simply track the precise words of the statute, did not first allege the offense of assault and then, secondly, allege the aggravating feature, but, instead, alleged an aggravating feature, with a culpable mental state, but then alleged what is not an offense in our penal code, without even alleging a culpable mental state.

This deficiency enables appellant to correctly assert that his motion to quash the indictment should have been sustained because the only culpable mental state that was alleged did not go to an unlawful act, and because there is no allegation in the indictment that he knowingly and intentionally threatened George Smith with imminent bodily injury by the use of a deadly weapon, not only could he not be guilty of an aggravated assault, but such defective pleading did not even vest jurisdiction in the trial court.

The test for deciding whether an indictment is sufficient to charge a particular offense, in the face of a motion to quash, is to examine the indictment from the perspective of the statutory offense, i.e., in this instance, the indictment must be examined to make the determination whether the indictment, when read as a whole, sufficiently alleges the offense of aggravated assault by a deadly weapon. This is differ-

ent from the situation where the defendant contends in a motion to quash that he has not received sufficient notice of the offense he is accused of committing. In that instance, the indictment must be examined from the perspective of the accused and in light of the presumption of innocence. See *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr. App.1983). Thus, complaints which relate to insufficient notice, rather than to a jurisdictional defect in the indictment, should be raised by a motion to quash; in the absence of such a motion, a nonjurisdictional defect will not be considered for the first time on appeal. *Clark v. State*, 577 S.W.2d 238 (Tex.Cr.App.1979).

In this instance, the conjunction "and" should be read to reflect that it is joining two clauses grammatically complete to form a single compound sentence. Strunk and White, *The Elements of Style*, (Third Edition). But see *Pass v. State*, 634 S.W.2d 857 (Tex.App.—San Antonio 1982) (P.D.R. Refused) (Which defined the word "and" rather than construing it as to how it was grammatically used in that indictment.) In *Pacheco v. State*, 529 S.W.2d 77 (Tex.Cr.App.1975), this Court approved an aggravated assault indictment that alleged in pertinent part that the accused "did then and there use a pistol, a deadly weapon, *to* intentionally threaten imminent bodily injury to Ernest Riojas." (Our emphasis.) The Court correctly held: "We perceive no material difference between alleging that one intentionally threatened another with imminent bodily injury by using a pistol *and* alleging one used a pistol *to* intentionally threaten another with imminent bodily injury." (My emphasis). "Each is sufficient to allege aggravated assault with a deadly weapon under V.T.C.A., Penal Code, Sections 22.01(a)(2) and 22.02(a)(3)." (77).

Thus, pursuant to the statutory scheme of things, there is no requirement that the State allege in the charging instrument a culpable mental state as to the aggravating feature, where it either first or secondly pleads the statutory elements of the underlying offense, including a culpable mental state, which was done in *Pacheco v. State*,

supra. Also see Art. 22.11, V.A.C.C.P. But, that is not this case.

In the cause before us, the issue is not simply whether the State through its prosecuting attorney made grammatical errors when he prepared the charging instrument. Cf. *Butler v. State*, 551 S.W.2d 412 (Tex. Cr.App.1977). It is, instead, whether he properly alleged the offense of aggravated assault in the indictment.

Unless the definition of an offense clearly dispenses with the requirement of a culpable mental state, one of the culpable mental states, i.e., intentional, knowing, reckless, or criminal negligence, must be pled in the charging instrument, i.e., a culpable mental state must be inserted in the indictment unless the definition of the substantive crime plainly dispenses with any mental element. See V.T.C.A., Penal Code, Section 6.02(b). Also see *Baldwin v. State*, 538 S.W.2d 109 (Tex.Cr.App.1976). The offense of assault that the State attempted to allege in this instance plainly requires as an element thereof the culpable mental state of either intentional or knowing.

It is now axiomatic that where the indictment is required to allege a culpable mental state, and it fails to do so, it is fundamentally defective and may be attacked on direct appeal as well as through a post-conviction writ of habeas corpus. *Garcia*, supra. This is because a fundamentally defective indictment does not provide the trial court with jurisdiction, and for that reason any conviction purportedly based on it is void. *American Plant Food Corp. v. State*, 508 S.W.2d 598, 603 (Tex.Cr.App.1974). A jurisdictional defect, such as failure to allege the essential elements of an offense as defined in V.T.C.A., Penal Code, Section 1.07(a)(13), renders the indictment insufficient to state an offense. *Green v. State*, 571 S.W.2d 13, 15 (Tex.Cr.App.1978). If required by the offense, a culpable mental state is an essential element of the offense. *Chance v. State*, 563 S.W.2d 812 (Tex.Cr. App.1978). However, the indictment must be read as a whole to ascertain whether it is jurisdictionally sufficient to charge the intended offense, here aggravated assault by the use of a deadly weapon. *Childs v. State*, 547 S.W.2d 613, 615 (Tex.Cr.App. 1977). Thus, but as Judge Clinton pointed out in *Soto v. State*, 623 S.W.2d 938, 939 (Tex.Cr.App.1981), "in a real sense, we look for omissions—for constituent elements of the statutory offense that are missing—in an indictment, for if an element is omitted 'then the indictment fails to allege an offense,' *Ex parte Mathis*, 571 S.W.2d 186, 187 (Tex.Cr.App.1978)."

I believe that the indictment under scrutiny, read grammatically and as a whole, actually attempts to charge the appellant with committing two things, namely, (1) knowingly and intentionally using a deadly weapon, to-wit: a firearm, *and* (2) threatening George Smith with imminent bodily injury by the use of a deadly weapon, to-wit: a firearm. Neither, however, charges a criminal wrong under our Penal Code. The indictment is defective as a matter of substance. It fails to allege that appellant did knowingly and intentionally threaten the complainant with imminent bodily injury. It thus fails to allege all of the constituent elements of the offense of assault which is claimed to have been aggravated by the use of a deadly weapon, and in turn fails to allege the offense of aggravated assault. Appellant's conviction cannot stand.

Appellant's ground of error number three should also be sustained. The majority correctly reverses appellant's conviction. I concur.