**Michael Anthony EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–88–00982–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 26, 1989.
Rehearing Denied Nov. 30, 1989.

Lana Gordon, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

A jury found appellant guilty of two murders and assessed punishment at confinement in the Texas Department of Corrections for forty years on each murder, to run concurrently.

Appellant claims three points of reversible error; one by reason of the trial court's refusal to charge the jury on the lesser included offense of involuntary manslaughter, and the other two alleging improper jury argument. We affirm in part and reverse in part.

Appellant used a tire jack and a knife to kill his wife and a man he believed to be her lover. Appellant's signed statement at the time of his arrest gives insight to the nature of the offense and provides the basis for reviewing some of appellant's allegations:

Tonight I came to the Downtown police station after coming from the apartment that I did share with my wife Gayle until recently. Tonight I went over there about thirty minutes before I came to the rear of the police station. We had some problems and had separated.

Tonight I went over to the apartment and I knocked at the door. My wife answered it and I told her that I wanted to talk. She said she had company. I wanted her to come out and talk and she did not want to talk to me. She shut the door in my face. I was upset and I went and got the bumper jack out of the trunk of the yellow Olds car that I drove down to the police station tonight. I walked back and forth in front of the apartment not really knowing what to do. I let myself into the apartment and I just started swinging the bumper jack at my wife and her lover.

I have been involved in a lawsuit since 1985 and I have been doing a lot of work on it. I had pawned my car when we separated another time and stayed in a motel. I had other job offers but Gayle would not help me by giving me rides and she would not help me out with money. It seemed to me that she wanted me out on the street. We had only been apart this time for a week and I just could not take it that she took up with someone else so quickly. I loved her so much.

When I got to the police station tonight I went up to some officers and told them that I had just killed my wife. They called some detectives and then we went to the Homicide Division. We have had problems but I have never hit her before even when she hit me. There has just been a lot of pressure on me lately and I could not handle the thought of losing her.

The wife died after receiving several blows to the head and she also had a stab wound in her chest. The man died after three stab wounds in the chest and fourteen blows to the head.

The jury was given a charge with instruction on murder and voluntary manslaughter, but the trial judge refused appellant's request for an additional charge on involuntary manslaughter. Appellant asserts it was error to refuse to allow the jury to consider involuntary manslaughter as a lesser included offense to those that were charged.

Where evidence raises an issue that a lesser included offense may have been committed, and a jury charge is properly requested, the issue should be submitted to the jury. *Moore v. State*, 574 S.W.2d 122 (Tex.Crim.App.1978). A charge on a lesser included offense is not required merely because proof of the lesser offense is within the evidence proving the greater offense. *Aguilar v. State*, 682 S.W.2d 556 (Tex.Crim.App.1985). There must be some evidence in the record that if the defendant is guilty, he is guilty of the lesser included offense, but not the greater offense. *Royster v. State*, 622 S.W.2d 442 (Tex.Crim. App.1982). The lesser included offense of involuntary manslaughter would be properly submitted to the jury if the evidence showed such an offense could reasonably be the only properly charged offense, looking to all the evidence adduced at trial. *See Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984). (Defendant, convicted of murder, was entitled to an instruction on the lesser included offense of involuntary manslaughter involving a lesser included culpable mental state.) This is so regardless of whether the evidence is weak, impeached or contradicted. *Bell v. State*, 693 S.W.2d 434, 443 (Tex.Crim.App. 1985). A defendant's own testimony, though contradicted, is sufficient to require an instruction on a lesser included offense. *Hunter v. State*, 647 S.W.2d 657 (Tex.Crim. App.1983).

A person commits involuntary manslaughter when he recklessly causes the death of an individual. Tex.Penal Code Ann. § 19.05(a)(1).

A person acts "recklessly"

... when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(c). (Emphasis added.)

Appellant argues that his confession, quoted above, gives evidence of lack of intent to kill as does his oral testimony at trial. Appellant cites *Bell v. State*, 693 S.W.2d 434 (Tex.Crim.App.1985) to argue that recklessness is a lower culpable mental state necessarily contained within the actual intent or knowledge or state of mind which must be established by the State when proving either murder or voluntary manslaughter. Appellant also urges us to consider the rationale of *Lugo v. State*, 667 S.W.2d 144 (Tex.Crim.App.1984) to determine whether the jury should have been allowed to selectively believe some of the evidence and reject other evidence in determining whether appellant's state of mind at the time of the offense met the definition of involuntary manslaughter.

In considering appellant's argument, we look at the relevant phrasing at the end of the second paragraph of appellant's signed statement. "I let myself into the apartment and I just started swinging the bumper jack at my wife and her lover."

We also look at that part of appellant's testimony on direct examination which is related to his encounter at the apartment with his wife in the company of another man:

APPELLANT: He [complainant] said [to] Gayle [other complainant], tell the nigger [appellant] to get away from the door.

COUNSEL: How did you feel about that?

APPELLANT: Anger.

* * * * * *

COUNSEL: Then what?

APPELLANT: I just started shaking. Shaking.

* * * * * *

COUNSEL: Why did you go down to the car?

APPELLANT: To find something to get him out of my house.

COUNSEL: You just wanted him out of your house?

APPELLANT: Yes, I did.

COUNSEL: You intend to hurt him?

APPELLANT: No, I wasn't.

COUNSEL: Did you want to hurt him?

APPELLANT: No, I wasn't.

COUNSEL: Were you afraid of him in any way?

APPELLANT: I was afraid enough that he said something like that inside my house.

* * * * * *

COUNSEL: What happened then?

APPELLANT: I walked back in. It was like something just hit me, it just came over me. People started moving, I started moving, I started swinging a whole lot.

COUNSEL: When you went into or back up to the apartment did you have any intention to go back and harm anyone?

APPELLANT: No, I didn't.

COUNSEL: You are under accusation here and on trial for intentionally trying to take the life of another. Did you ever have that intention at anytime to do anything with that result?

APPELLANT: Nothing like that never [sic] came to my mind.

* * * * * *

COUNSEL: You said a moment ago, Michael, that you opened the door and walked in, people were moving and it just came over you. What?

APPELLANT: Well, whatever is was. Seemed like my heart tried to come out of my body, pain was burning from my chest to my throat. Whatever it was, just thoughts and everything, you know, a lot of things. I can't really recall.

Appellant asks us to consider the following testimony given by him on cross-examination:

STATE: You say when you grabbed the jack you knew what you were going to do?

APPELLANT: No, I did not.

STATE: When did you decide.

APPELLANT: Decide what?

STATE: What you were going to do with the jack?

APPELLANT: I decide [sic] I was going to get him out of my house.

STATE: The jack certainly wasn't to go have a picnic with him?

APPELLANT: No, it was for my protection as well as to get him out of my house.

While appellant's testimony may only be showing that appellant could not accurately recall what his mental state was at the time of the encounter, by performing the analysis of *Bell*, applying the logic of *Lugo* upon which *Bell* is based, and giving the jury the exclusive right to determine appellant's intent as required under *Moreno v. State*, 702 S.W.2d 636 (Tex.Crim.App.1986), we must consider *all* the evidence to see if the issue of involuntary manslaughter is properly raised.

The jury reasonably could have rejected appellant's testimony that he did not intend to harm either of the victims, or the jury could have inferred from the facts that appellant knew the swinging of the jack inside the apartment was unduly dangerous. In the latter case, the jury reasonably could have concluded that appellant's actions in swinging the jack inside the apartment constituted a conscious disregard of "a substantial and unjustifiable risk," and that appellant was therefore guilty of an offense of involuntary manslaughter. Thus by selectively believing some of the proffered and introduced evidence adduced at trial and rejecting other proffered and introduced evidence, the jury could have concluded that appellant was not acting with intent to threaten imminent

bodily injury, but was nonetheless swinging the heavy bumper jack in close proximity of the people in the apartment thereby creating the risk that they were in danger of serious bodily injury.

As to the use of the bumper jack, the jury was entitled to infer that appellant acted in conscious disregard of the substantial and unjustified risk that the result of his conduct would occur. As to the use of the bumper jack, we hold that it was error for the court below to refuse appellant's requested charge on involuntary manslaughter, leaving the jury less than a proper full range of offenses from which to choose, as well as the choice of acquittal. "Must reversal follow the determination of this error in this charge?" *Moreno v. State*, 702 S.W.2d at 641. In that case, *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) was applied to assay actual harm by using all relevant information in the record. To answer the question of reversal here, we must focus in particular on the cause of death of each of the two victims and the relationship of those causes to the offenses for which appellant was indicted.

The medical examiner's testimony showed that the wife died from blows to the head from an object such as the bumper jack. The later stabbing with a knife had no effect on her death. The male victim died from a combination of multiple blows to the head and a stab wound from the six inch knife blade which police found sticking in his chest.

■ Appellant was indicted for causing the death of his wife by striking her on the head with a deadly weapon, namely, an automobile jack. Appellant also was charged, in a second count in the indictment, with causing the death of the "lover" by striking him on the head with a deadly weapon, namely an automobile jack, and by stabbing him with a deadly weapon, namely a knife. The jury was charged with finding appellant guilty as charged in the indictment if it found appellant had struck the victim on the head with an automobile jack or had stabbed him with a knife. The jury returned a verdict which found appellant guilty of murder "as charged in count two the indictment." Where a jury returns a general verdict, finding the defendant guilty as charged in the indictment, the verdict must be applied to the allegation of the offense that is supported by the evidence. *Wright v. State*, 364 S.W.2d 384, 387 (Tex.Crim.App.1963), *cert. denied* 375 U.S. 870, 84 S.Ct. 96, 11 L.Ed.2d 96. In the case before us the jury could logically and rationally conclude from the evidence that appellant murdered the "lover" by stabbing him with a knife. If there is sufficient evidence to prove one of two ways of committing an offense, we need not consider whether the evidence also proves the alternative theory unless there was a motion for the State to elect the precise manner in which the offense was committed. *Vasquez v. State*, 665 S.W.2d 484 (Tex.Crim.App.1984), overruled on other grounds, 723 S.W.2d 746 (Tex.Crim.App.1987). *Pinkerton v. State*, 660 S.W.2d 58, 62 (Tex.Crim.App.1983). There was no motion in the case before us requiring the State to make an election.

■ We find the jury charge was defective as to the first count dealing with the murder of the wife by the instrumentality of the bumper jack. It was error to refuse an instruction on involuntary manslaughter. The error was harmful, and the conviction on count one of the indictment is reversed. However, concerning the murder of the male companion by the instrumentality of the knife, the charge need not have included an instruction on involuntary manslaughter under the following reasoning.

Unlike the bumper jack, there is no evidence in the appellant's confession or testimony which would allow a jury to find the elements of involuntary manslaughter related to his use of the knife. The confession is completely silent about the knife and appellant's testimony gives only the following information on the subject:

STATE: And for the record you did kill James Brown; did you not?

APPELLANT: Yes, I did. Yes.

STATE: And when you killed him you used a knife and that automobile jack?

APPELLANT: I don't exactly recall.

STATE: You don't exactly recall?

APPELLANT: No, I do not. I remember coming in the apartment with the jack.

STATE: You walked in there with a jack?

APPELLANT: Yes, sir.

STATE: And you said you started swinging?

APPELLANT: Yes, sir.

STATE: Walked in alone; didn't you? You walked in alone?

APPELLANT: Yes, sir. I did.

\*     \*     \*     \*     \*     \*

STATE: —where did this [the knife] come from?

APPELLANT: That's my kitchen knife.

STATE: You had that with you?

APPELLANT: No, I did not.

STATE: Okay. Where did it come from?

APPELLANT: I guess it came from the kitchen.

STATE: You guess?

APPELLANT: It was our kitchen knife we had in the kitchen.

\*     \*     \*     \*     \*     \*

STATE: I will show you State's Exhibit No. 56, the photograph of Mr. Brown with a butcher knife in his chest.

APPELLANT: Yes, sir, I see it.

STATE: You put that butcher knife in his chest; didn't you?

APPELLANT: I have no knowledge of it. I don't recall.

STATE: Just don't remember?

APPELLANT: I do not.

Appellant's first point of error is sustained in part and overruled in part. The judgment on count one of the indictment is reversed and remanded for a new trial.

In his second and third points of error appellant complains of improper jury argument and comments by the prosecution.

■ At the guilt/innocence stage, the prosecutor said, "What you do is important because if you acquit him of murder you are rewarding Michael Evans and all the Michael's Evans [sic] in the world." Appel-

lant objected to this "characterization," and the objection was sustained. However, the objection was not pursued to an adverse ruling and error was therefore not preserved. *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App.1984).

■ At the punishment stage the State argued, "Because not only should you do justice in this case but you must do what is best for society, to protect society from the defendant and people like him." No objection was made to this remark; therefore, no complaint is preserved for appellate review. *Armstrong v. State*, 718 S.W.2d 686, 699 (Tex.Crim.App.1985).

■ In the concluding sentence of the State's closing, the following remarks were made to the jury, "Finally, those two people who died aren't here, but from their graves they are crying out for justice. You may be a jury today to the defendant, but for them you are God. You must see that justice is done in this case and give him life." No objection being made to these remarks, no error was preserved for review. *Armstrong v. State*, 718 S.W.2d at 699. Rule 52(a) Tex.R.App.P.

We do not find that any of the three instances of alleged improper argument brought here as points of error two and three were fundamental error affecting substantial rights of the appellant. Lacking proper objection to preserve error, points two and three are hereby overruled. Tex.R.Crim.Evid. 103(d).

The judgment of the trial court is affirmed in part, reversed in part, and remanded for a new trial on count one of the indictment.

DRAUGHN, Justice, dissenting.

I disagree with the holding that the jury should have been given an instruction on involuntary manslaughter as to count one of the indictment related to the killing of appellant's wife.

I object to the law being applied in such a way that the accused of any offense can gerrymander his confession and construct his self-serving testimony in such a way that he creates for himself a chance to

382

have a greater number of offenses presented to the jury from which it may make a choice. Surely the practice of selectively using bits and pieces of the evidence to see if there is a possibility that the jury might find a lesser included offense ought to include room for the use of common sense by the trial judge.

In the present case, the only way I could conceive that a jury might find involuntary manslaughter would be if there were strong belief that appellant was engaged in reckless conduct while attempting to protect his home by chasing out an unwanted intruder or responding to some perceived attack on his person. There is substantial evidence in the record that appellant never did live at the apartment where the killings occurred, in that his estranged wife had just moved there a few days earlier. It is inconceivable that anything involuntary is going on when a person is confronted with a situation such as the appellant was when he found his wife with another man and was rejected at the door. The trip down to the car to get the instrument of death and the subsequent entry to an apartment which was not his own, coupled with the impact of the bumper jack on the wife's head four times and the male companion's head fourteen times looks to me anything but involuntary. My conviction as to a lack of recklessness is compounded by the stabbings which also occurred. To permit the use of selected testimony to construct a case for a jury charge on involuntary manslaughter gives too much attention to technical form and not enough attention to the substantive facts of the case.