

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00153-CR
### NO. 02-15-00154-CR
### NO. 02-15-00155-CR

ANTHONY ROBERT SAFIAN                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1383629D, 1383630D, 1386101D

----------

## MEMORANDUM OPINION[1]

----------

In three points, appellant Anthony Robert Safian appeals his convictions

for aggravated assault on a public servant and possession of less than one gram

---

[1]*See* Tex. R. App. P. 47.4.

of heroin.[2]  In a fourth point, he appeals a deadly weapon finding associated with his conviction for evading arrest while using a vehicle.[3]  We overrule all of appellant's points; modify the judgment in the heroin possession case, trial court number 1386101D;[4] affirm that judgment as modified; and affirm the judgments in trial court cause numbers 1383629D and 1383630D in all respects.

**Background Facts**

In September 2014, Fort Worth Police Department (FWPD) Officer Juan Trujillo and another officer, while undercover, were monitoring a home where they suspected that illegal drug sales were occurring.  The home was in an area in which drug-related crime was common.  The officers saw a truck pull into the driveway of the home, and appellant got out of the truck and went inside.  Less than five minutes later, he left the home, got back into the truck, and drove away.  In an unmarked car, Officer Trujillo and his partner began to follow him.

Eventually, appellant stopped in the middle of a narrow residential road that had overgrown vegetation and uneven pavement on its sides.[5]  Officer Trujillo's partner honked a horn several times, but the truck remained in the road

---

[2]See Tex. Penal Code Ann. § 22.02(a)(2), (b)(2)(B) (West 2011); Tex. Health & Safety Code Ann. § 481.115(a)–(b) (West 2010).

[3]See Tex. Penal Code Ann. § 38.04(a) (West Supp. 2015).

[4]This cause number relates to appellate cause number 02-15-00155-CR.

[5]Officer Trujillo opined that two cars would not be able to safely pass each other on the road.  He also testified that the road has deep potholes.

2

approximately fifteen feet in front of the officers' car. The officers saw appellant lean toward his truck's center console; Officer Trujillo believed that appellant was "ingesting . . . narcotics in his arm."

Officer Trujillo called for a marked police unit to join him and his partner there. FWPD Officer Matthew Pearce arrived. He parked his patrol car about ten feet in front of appellant's truck with the vehicles facing each other and got out of the car. He saw the truck remaining in the middle of the road, which he believed to be a traffic offense. After Officer Pearce had taken a few steps toward appellant's truck and had unholstered his gun, according to Officer Trujillo, appellant sat up "really straight," put the truck into gear, and quickly "sped towards Officer Pearce." Officer Trujillo saw Officer Pearce's eyes "get really big" as the truck spun its tires and moved toward Officer Pearce. From Officer Trujillo's vantage point, he initially thought that the truck had hit Officer Pearce. But Officer Trujillo then saw Officer Pearce get into his patrol car and begin following appellant. From a distance, Officer Trujillo and his partner also followed Officer Pearce and appellant.

After a long chase in which appellant ran stop signs, drove the wrong way into oncoming traffic to avoid a traffic buildup, and traveled at speeds of forty to fifty miles over the limit, he crashed with another vehicle. Appellant's truck sustained heavy damage.[6] Officer Pearce approached the truck and

---

[6]Exhibits that the trial court admitted show that appellant's truck sustained significant damage and that the other vehicle involved in the accident had

3

commanded appellant to show his hands. Appellant did not do so, and because the driver's side door to the truck would not open, Officer Pearce broke appellant's window. Officer Pearce said to appellant that appellant had almost "killed all these people," and he also told appellant that he was in a "lot of trouble" because he had "[run] from [Officer Pearce]." Appellant said to Officer Pearce, "I can't believe I did that." Later, Officer Pearce again told appellant that he had run from the police.

After appellant got out of the truck, the police conducted an inventory of it. On the driver's-side floorboard of the truck, Officer Pearce found a silver metal spoon with heroin on it.[7] Officer Pearce also found needles "strewn throughout the vehicle."

Through separate indictments, a grand jury charged appellant with aggravated assault against a public servant, possession of less than a gram of heroin, and evading arrest or detention while using a vehicle. The indictment for appellant's evading arrest charge included a paragraph alleging that he had used a deadly weapon during that offense. All three indictments contained a paragraph alleging that appellant had been previously convicted of at least one

substantial damage to its front end. A video recording admitted into evidence indicates that the driver of the other vehicle sustained physical injuries that required a neck brace and transport to a hospital.

[7]The spoon had a dark substance on it, and the bottom side of the spoon appeared to be burnt. A forensic chemist tested the dark substance on the spoon and determined that it was heroin.

felony; the indictment for possession of heroin alleged that he had been previously convicted of two state jail felonies. Appellant filed several pretrial motions, chose the trial court to assess his punishment if he was convicted of the charges, and pled not guilty to all of them. He also pled not true to the indictments' enhancement and deadly weapon allegations.

At trial, Officer Pearce testified that as he pulled up to the scene, his patrol lights were flashing, but appellant was looking down while sitting in the truck. Officer Pearce explained that when he got out of his car, he and appellant "locked eyes." Appellant looked surprised to see Officer Pearce there. According to Officer Pearce, from just over ten feet away, appellant "yanked . . . down" the gearshift, "hit the gas[,] and accelerated towards" Officer Pearce. Officer Pearce explained that all of this "happened kind of simultaneously," within the span of just a few seconds. Officer Pearce's driver's-side door was still open, so he retreated to his car and threw himself inside of it to avoid getting hit. As appellant passed by the driver's side door, most of Officer Pearce's body was in his car, but his legs were hanging out. Officer Pearce testified that he was afraid of getting hit and of appellant hitting the door, which could have pinned Officer Pearce's legs. Officer Pearce opined that appellant's truck came "within a foot of striking [his patrol car's] door."

After receiving the parties' evidence and arguments, the jury found appellant guilty of all of the charges and found that he had used a deadly weapon

5

while evading arrest.[8]  The trial court received further evidence and arguments concerning appellant's punishment.   The court found the enhancement paragraph in each indictment to be true and sentenced him to eighteen years' confinement for evading arrest or detention while using a vehicle, eighteen years' confinement for aggravated assault against a public servant, and ten years' confinement for possessing less than a gram of heroin.  The trial court included a deadly weapon finding in the judgments for evading arrest and for aggravated assault against a public servant and ordered all of the sentences to run concurrently.  Appellant brought these appeals.

### Evidentiary Sufficiency

In his first, second, and fourth points, appellant contends that the evidence is insufficient to support his convictions for aggravated assault of a public servant and possession of less than a gram of heroin and to support the jury's finding that he used a deadly weapon during the evading arrest offense.  In our due-process review of the sufficiency of the evidence to support a conviction, we view

---

[8]The jury deliberated for hours.  At one point during the deliberation, the jury sent a note to the trial court that stated that the jury had made a decision on the charges for evading arrest and possessing heroin but that the jury was at a stalemate on the aggravated assault charge.  The trial court gave the jury an *Allen* charge, and less than an hour later, the jury found appellant guilty of aggravated assault.  *See Allen v. United States*, 164 U.S. 492, 501–02, 17 S. Ct. 154, 157 (1896); *see also Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) ("An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked.  It reminds the jury that if it is unable to reach a verdict, a mistrial will result, . . . and there is no guarantee that a second jury would find the issue any easier to resolve.").

6

all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (applying the *Jackson* standard to review a deadly weapon finding).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We

7

must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

**Aggravated assault**

In his first point, appellant argues that the evidence is insufficient to support his conviction for aggravated assault of a public servant. To obtain a conviction for aggravated assault of a public servant under the facts of this case, the State was required to prove that appellant intentionally or knowingly threatened Officer Pearce with imminent bodily injury, used or exhibited a deadly weapon (his truck), and knew that Officer Pearce was a public servant and was lawfully discharging an official duty. *See* Tex. Penal Code Ann. §§ 22.01(a)(2) (West Supp. 2015), 22.02(a)(2), (b)(2)(B). A jury may infer a defendant's intent from circumstantial evidence such as the defendant's words or conduct. *Lozano v. State*, 359 S.W.3d 790, 814 (Tex. App.—Fort Worth 2012, pet. ref'd).

Appellant expressly limits his argument to challenging the proof concerning the intentional or knowing threat of Officer Pearce with a deadly weapon; he does not assert that the evidence is insufficient to prove that he knew Officer Pearce was a public servant who was lawfully discharging an official duty. The gist of appellant's argument is that the evidence shows only that he "unthinkingly attempted to get away from [Officer] Pearce by driving past him"; appellant contends that the evidence of his "operation of [the truck] was not indicative of an attempt to convey a threat of imminent bodily injury." The State contends that

8

appellant's actions and words allowed a rational jury to find that he intentionally or knowingly threatened Officer Pearce.

This is the classic example of an appeal in which we must defer to the jury's resolution of conflicting reasonable inferences that the evidence produced. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170; *see also Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126, at *5 (Tex. App.—Fort Worth Aug. 15, 2013, pet. dism'd) (mem. op., not designated for publication) ("[T]he jury was entitled to choose between two reasonable inferences, and we must defer to that choice."). Specifically, the jury could have reasonably inferred that appellant intentionally or knowingly threatened Officer Pearce with a deadly weapon from (1) Officer Trujillo's testimony that upon appellant's seeing Officer Pearce, appellant "sped towards [him]" at a high enough rate of speed to spin his tires and kick up dust from the rear of the truck; (2) Officer Trujillo's testimony that appellant's truck drove close enough to Officer Pearce that he thought it hit Officer Pearce; (3) Officer Pearce's testimony that after he and appellant made eye contact and he told appellant to not move, appellant "yanked . . . down" the gearshift, "hit the gas[,] and accelerated towards [Officer Pearce]"; (4) Officer Pearce's testimony that he had to throw himself into his patrol car to avoid getting hit and that the truck would have struck him had he not done so;[9] (5) Officer Pearce's testimony that appellant's truck came within a

---

[9]Given this evidence, we cannot agree with appellant's statement that "any fear allegedly felt by [Officer] Pearce was manifestly not reasonable."

9

foot of striking his patrol car's door; and (6) Officer Pearce's testimony that he feared for his safety. *Cf. Swartz v. State*, Nos. 05-03-00577-CR, 05-03-00578-CR, 05-03-00579-CR, 2004 WL 1234047, at *1, *5 (Tex. App.—Dallas June 4, 2004, pets. ref'd) (not designated for publication) (holding that the jury could infer a defendant's intent to threaten an officer when the defendant smiled and accelerated toward the officer and almost hit the officer); *see also Creighton v. State*, No. 08-09-00022-CR, 2011 WL 743073, at *3 (Tex. App.—El Paso Mar. 2, 2011, no pet.) (not designated for publication) (reaching the same conclusion under similar circumstances). Conversely, a jury could have reasonably inferred that appellant did not intend to threaten Officer Pearce, but only had the mindset of evading him, from (1) the evidence indicating that the road's conditions necessarily required appellant to drive close to Officer Pearce to get around him; (2) the officers' testimony that appellant did not attempt to drive toward Officer Pearce again after passing him; (3) the heroin found in appellant's truck, which may have given him motivation to evade capture; (4) Officer Pearce's statements after appellant's wreck that focused on appellant's evasion of him and did not mention that he had felt threatened; (5) Officer Pearce's testimony that he did not see appellant turn the truck specifically in his direction; and (6) the evidence showing that appellant was not violent or hostile toward Officer Pearce during their conversation that occurred after the wreck.

Viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's implicit choice between these reasonable conflicting

10

inferences, we conclude that a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly threatened Officer Pearce with a deadly weapon. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170. We therefore conclude that the evidence is sufficient to sustain appellant's conviction for aggravated assault, and we overrule his first point.

**Deadly weapon finding on evading arrest conviction**

In his second point, appellant contends that the evidence is insufficient to support the deadly weapon finding associated with his conviction for evading arrest. As we have recently explained,

> A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." For evidence to be sufficient to sustain a deadly weapon finding, it must demonstrate that the object meets the statutory definition of a deadly weapon, that the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, and that other people were put in actual danger. "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. Specific intent to use a motor vehicle as a deadly weapon is not required."

*Daniel v. State*, No. 02-14-00246-CR, 2015 WL 4043351, at *5 (Tex. App.—Fort Worth July 2, 2015, no pet.) (citations omitted); *see also* Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2015); *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) ("An automobile can be a deadly weapon if it is driven so as to endanger lives.").

We cannot agree with appellant's position that the State failed to prove these elements. The evidence shows that in the afternoon rush hour and on an approximate two-mile stretch of roadway where other cars were present, appellant committed numerous traffic violations, including running stop signs and driving into oncoming traffic;[10] that he traveled at speeds of forty to fifty miles per hour over the speed limit; and that he was eventually involved in an accident that disabled the automobile that he crashed with and caused its airbag to deploy, caused physical pain to the driver of that automobile, and sprayed debris from the two vehicles across a roadway. Officer Pearce testified more than once that appellant's truck was capable of causing death or serious bodily injury, and he also explained that there was significant traffic on the road where the accident occurred at that time of day.

Viewing all of the evidence in the light most favorable to the deadly weapon finding, we conclude that a rational jury could have found beyond a reasonable doubt that appellant's truck qualified as a deadly weapon in the manner of its use during the evading arrest offense. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *Drichas*, 175 S.W.3d at 798; *Daniel*, 2015 WL 4043351, at *5– 6; *see also State v. Sneed*, No. 09-14-00232-CR, 2014 WL 4755502, at *2–3

---

[10]Officer Pearce testified that appellant "crossed into oncoming traffic *to get around the traffic* that was slow moving at the light." [Emphasis added.] Furthermore, the video from Officer Pearce's body camera shows the presence of other cars at the scene of the accident. And the accident occurred close to a Wal-Mart store. Given these facts, we cannot agree with appellant's assertion on appeal that there is "little evidence that other motorists were present."

12

(Tex. App.—Beaumont Sept. 24, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was sufficient to support a deadly weapon finding when in the course of evading arrest, the defendant exceeded the speed limit, swerved in and out of traffic, struck a curb on two occasions, and failed to stop or slow down at intersections); *Turner v. State*, No. 08-11-00318-CR, 2013 WL 5516447, at *4 (Tex. App.—El Paso Oct. 2, 2013, no pet.) (not designated for publication) (holding that the evidence was sufficient to show that a defendant used his vehicle as a deadly weapon when he exceeded the speed limit around other vehicles, swerved between lanes, drove through a red light, and nearly collided with another car).[11]  We overrule appellant's second point.

**Possession of heroin**

In his fourth point, appellant asserts that the evidence is insufficient to support his conviction for possessing less than a gram of heroin.  To obtain appellant's conviction for that offense, the law required the State to prove that he intentionally or knowingly possessed less than a gram of heroin.  *See* Tex. Health & Safety Code Ann. § 481.115(a)–(b).  He possessed the heroin if he had actual care, custody, control, or management of it and knew that it was a controlled substance.  *Id.* § 481.002(38) (West Supp. 2015); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  The State must have proved through direct or circumstantial evidence that his connection with the heroin was more

---

[11]We have reviewed the three comparative cases cited in appellant's brief on this point, and we conclude that they are distinguishable.

than fortuitous. *Evans*, 202 S.W.3d at 161–62. Links that may establish a defendant's connection to illegal drugs include the defendant's presence when a search is conducted, whether the contraband was in plain view, the defendant's proximity to and the accessibility of the narcotic, whether the defendant possessed other contraband or narcotics when arrested, whether the defendant attempted to flee, whether the defendant made furtive gestures, whether other contraband or drug paraphernalia were present, and whether the defendant owned or had the right to possess the place where the drugs were found. *Id.* at 162 n.12; *see Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("It is not the number of links that is dispositive, but rather, the logical force of all the evidence, both direct and circumstantial.").

We conclude that the evidence is sufficient to show that appellant had care and management over the heroin and knew that it was a controlled substance. *See Evans*, 202 S.W.3d at 161. Specifically, the record shows that Officer Trujillo was conducting surveillance on a confirmed drug house;[12] that appellant went inside the house and left it minutes later; that appellant then stopped his truck in the middle of a road while leaning toward the center console (which Officer Trujillo perceived as appellant's attempt to use drugs); that appellant became alarmed when he saw Officer Pearce standing near the truck; that

---

[12]Officer Trujillo testified that the police had received complaints that the house was a "narcotics location" and that the police had used someone to conduct a controlled purchase of drugs there.

14

appellant fled from the police after passing Officer Pearce;[13] and that Officer Pearce later discovered heroin, a burnt spoon, and several needles in plain view inside the truck that appellant had solely occupied. Viewing these facts and the remaining evidence in the light most favorable to the jury's verdict, we conclude that the jury could have rationally found beyond a reasonable doubt that appellant intentionally or knowingly possessed heroin. *See Dobbs*, 434 S.W.3d at 170; *see also Harmond v. State*, 960 S.W.2d 404, 406–07 (Tex. App.— Houston [1st Dist.] 1998, no pet.) (en banc) (holding that evidence was sufficient to support a conviction for possession of cocaine because the defendant was alone in a car with drug paraphernalia in plain view and easily accessible to him).[14] We overrule appellant's fourth point.

**Alleged Jury Charge Error**

In his third point, appellant argues that the trial court erred by denying his request for an instruction concerning deadly conduct as a lesser-included offense in the jury charge for aggravated assault. All alleged jury-charge error must be

[13]In his reply brief, appellant concedes that it is "reasonable to infer that [his] flight indicates his consciousness of guilt to the crime of possession of a controlled substance."

[14]*Roberson v. State*, which appellant relies on for comparison, is distinguishable. *See* 80 S.W.3d 730, 736–41 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that the evidence was insufficient to link a defendant to drugs when the defendant drove a car that had three occupants, the drugs were found close to one of the occupant's seats, the occupants gave different stories about details of their trip, and the defendant attempted to disassociate himself from one of the passengers).

considered on appellate review. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.*

After the parties rested and closed during the guilt-innocence phase of the trial, the trial court held a conference concerning the jury charge. During the conference, appellant's counsel stated,

> [W]e would submit that there is evidence to support a lesser included on deadly conduct, reckless -- deadly conduct is a lesser-included offense of aggravated assault by threat. And, basically, what has to be shown is use of a deadly weapon recklessly puts someone in danger of serious bodily injury. And we believe that there are facts that would support a finding that he acted recklessly even if he didn't intend or knowingly threaten the officer when he drove by him.

The trial court denied appellant's request to include the offense of deadly conduct in the charge for aggravated assault.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must qualify as a lesser-included offense under article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Rousseau*, 855 S.W.2d at 672–73.

16

An offense is a lesser-included offense of another offense, under article 37.09(1), if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Both statutory elements and any descriptive averments alleged in the indictment for the greater inclusive offense should be compared to the statutory elements of the lesser offense. *Id.* If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included offense analysis in asking whether all of the elements of the lesser offense are contained within the allegations of the greater offense. *Id.*

As charged through the indictment pertinent to this point, a person commits aggravated assault on a public servant by intentionally or knowingly threatening a public servant with imminent bodily injury and using or exhibiting a deadly weapon during the commission of the offense. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). A person commits deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." *Id.* § 22.05(a) (West 2011).

17

Appellant relies on the court of criminal appeals's decision in *Bell v. State* to contend that deadly conduct is a lesser-included offense of aggravated assault by threat. *See* 693 S.W.2d 434, 439 (Tex. Crim. App. 1985). There, the defendant fired four gunshots into his neighbor's trailer, was convicted of aggravated assault, and contended on appeal that the trial court should have granted his request for a lesser-included instruction on reckless conduct (which is now known as deadly conduct). *See id.* at 436. In resolving that argument, the court of criminal appeals noted that whether

> one offense bears such a relationship to the offense charged so as to constitute a lesser included offense under [article 37.09] is an issue which must await a case by case determination. A given section of the Penal Code may define more than one way in which an offense can be committed. An allegation that an offense has been committed in one way may include a lesser offense, while an allegation that the offense was committed in another way would not include the lesser offense.

*Id.* (citations omitted).

The defendant in *Bell* had been charged through an indictment that alleged that he "knowingly and *intentionally use[d] a deadly weapon*, to wit: a firearm, and did then and there threaten George Smith with imminent bodily injury by the use of said deadly weapon." *Id.* at 437 (emphasis added). In concluding that reckless conduct was a lesser-included offense of aggravated assault as charged under this language, the court of criminal appeals stated,

> We now turn to consider whether the State established commission of the lesser included offense of reckless conduct by proof of the same or less than all the facts required to establish the offense charged, aggravated assault *by the use of a deadly weapon*.

18

In this case, when the State established the higher culpable mental state of intent or knowledge, it necessarily established the lower culpable mental state of recklessness. The precise issue thus becomes whether proof of threatening another with imminent bodily injury *by using a deadly weapon* constitutes proof that the actor engaged in conduct that placed another in imminent *danger* of serious bodily injury.

. . . .

Patently, threatening another with imminent bodily injury is engaging in conduct. When that threat is accomplished *by the use of a deadly weapon*, by definition the victim is "exposed" to the deadly character of the weapon and the inherent risk of serious bodily injury. The *danger* of serious bodily injury is necessarily established when *a deadly weapon is used in the commission of an offense*. It follows, therefore, that proof of threatening another with imminent bodily injury *by the use of a deadly weapon* constitutes proof of engaging in conduct that places another in imminent danger of serious bodily injury.

We hold that under [article 37.09], reckless conduct is a lesser included offense of "the offense charged" in the instant case because it is established by proof of the same facts required to establish the commission of aggravated assault *by the use of a deadly weapon.*

*Id.* at 438–39 (emphasis added) (citations omitted); *see also Guzman v. State*, 188 S.W.3d 185, 190 & n.9 (Tex. Crim. App. 2006) (citing *Bell* approvingly and holding that deadly conduct was a lesser-included offense of aggravated assault under specific circumstances).

But deadly conduct is not a lesser-included offense of aggravated assault under all circumstances. *See Hall*, 225 S.W.3d at 531, 535 (stating that the "pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction" and noting that

19

when "the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses").  And courts have distinguished *Bell* to hold that deadly conduct is not a lesser-included offense of aggravated assault when, as here, the indictment alleges that the defendant used *or exhibited* a deadly weapon.

For example, in *Miller v. State*, Miller was indicted for aggravated assault against a public servant under the following language:  "[Miller] did then and there intentionally or knowingly threaten [the victim] with imminent bodily injury and did then and there *use or exhibit* a deadly weapon, . . . during the commission of said assault and the defendant did then and there know that the [victim] was then and there a public servant."  86 S.W.3d 663, 664 (Tex. App.—Amarillo 2002, pet. ref'd) (emphasis added).  On appeal, Miller argued that the trial court should have charged the jury on deadly conduct as a lesser-included offense.  *Id.*  Distinguishing *Bell*, the Amarillo court held that Miller was not entitled to such a charge, explaining,

> In appellant's case, . . . the indictment reads differently than the language used in the indictment that was central to the *Bell* court's disposition of that case.  Whereas the indictment in *Bell* charged the defendant . . . with committing the offense of aggravated assault by "using" a deadly weapon, the indictment in appellant's case charged appellant with committing the offense by "using or exhibiting" a deadly weapon. Thus, proving the offense as alleged in the indictment does not require proof that appellant "used" a deadly weapon; proof that appellant "exhibited" a deadly weapon in the commission of the offense would suffice.  *The difference is dispositive, as it does not necessarily follow that the danger of serious bodily injury is established when a deadly weapon is "exhibited" in the commission of the offense as opposed to being*

20

*"used."* Therefore, under the circumstances of this case, deadly conduct is not a lesser-included offense of aggravated assault as charged because the statutory elements of deadly conduct would not necessarily be established by proof of the same or less than all the facts required to establish the commission of the offense charged. The trial court, therefore, did not commit error in refusing to charge the jury on deadly conduct as a lesser-included charge.

*Id.* at 666–67 (emphasis added).

We agree with the reasoning in *Miller* that the necessary implication of the elements of deadly conduct (in particular, placing another in "imminent danger of serious bodily injury") that arises when a defendant threatens bodily injury by using a deadly weapon does not necessarily arise when a defendant threatens bodily injury by using *or exhibiting* a deadly weapon.[15] *See id.*; *see also Schreyer v. State*, No. 05-03-01127-CR, 2005 WL 1793193, at *7–8 (Tex. App.—Dallas July 29, 2005, pet. ref'd) (not designated for publication) (following *Miller* and determining that deadly conduct was not a lesser-included offense of aggravated assault under similar circumstances). Therefore, we hold that deadly conduct was not a lesser-included offense of aggravated assault under article 37.09 as the latter offense was charged here.[16] *See* Tex. Code Crim. Proc. Ann.

---

[15]We recognize that another court has reached a conclusion contrary to the one in *Miller*. *See Amaro v. State,* 287 S.W.3d 825, 829 (Tex. App.—Waco 2009, pet. ref'd).

[16]Appellant's indictment for aggravated assault on a public servant states,

ANTHONY ROBERT SAFIAN, hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 2nd day of September 2014, did

21

art. 37.09; *Miller*, 86 S.W.3d at 666–67.  We hold that the trial court did not err by denying appellant's request for an instruction on deadly conduct, and we overrule his third point.  *See Hall*, 225 S.W.3d at 528.

## Modification of Judgment

Finally, although appellant has not raised any argument concerning the language of the trial court's judgment related to the heroin-possession charge, we have noticed that the court's judgment describes that offense as a "3RD DEGREE FELONY" even though appellant was convicted of a state jail felony with a punishment enhancement to the third-degree felony range.  *See* Tex. Health & Safety Code Ann. § 481.115(b) (classifying possession of less than one gram of a Penalty Group 1 controlled substance as a state jail felony); *see also* Tex. Penal Code Ann. § 12.425(a) (West Supp. 2015) (stating that a defendant shall be punished for a third-degree felony when the defendant is on trial for a state jail felony and has been previously convicted of two state jail felonies).  Thus, we modify the judgment in trial court cause number 1386101D to show appellant's conviction for a state jail felony.[17]  *See* Tex. R. App. P. 43.2(b);

---

INTENTIONALLY OR KNOWINGLY THREATEN IMMINENT BODILY INJURY TO M. PEARCE, A PUBLIC SERVANT, . . . AND THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE ASSAULT, TO-WIT: A MOTOR VEHICLE, THAT IN THE MANNER OF ITS USE OR INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY[.]

[17]His third-degree felony punishment range for the offense remains applicable.

*Ostrander v. State*, No. 02-12-00159-CR, 2013 WL 3064547, at *4 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op., not designated for publication) (modifying a judgment sua sponte to make a clerical correction).

**Conclusion**

Having overruled all of appellant's points, we affirm the trial court's judgments in its cause numbers 1383629D and 1383630D in all respects, modify the court's judgment in cause number 1386101D to reflect appellant's conviction for a state jail felony, and likewise affirm that judgment as modified.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 3, 2016