

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00063-CR

Ruben **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR2054
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: November 20, 2013

AFFIRMED

Ruben Martinez was convicted of murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2012). The trial court rendered judgment on the jury's verdict, and assessed punishment at life imprisonment. Martinez now appeals, challenging the trial court's refusal to instruct the jury on the lesser-included offense of manslaughter. We affirm the judgment of the trial court.

### BACKGROUND

George Ibarra testified that on the night of December 13, 2011, he was a rear passenger in a car driven by his friend, Frank Rodriguez, on Interstate 10/U.S. 90 in San Antonio. Another

friend named Christopher Acosta was sitting in the front seat. The men had been smoking marijuana earlier in the day and Rodriguez was driving slowly. In fact, Ibarra told Rodriguez to drive faster because he was afraid they would get pulled over for driving too slowly. As they were exiting toward Interstate 37, a black BMW came up behind Rodriguez's car on the exit ramp. The car was flashing its headlights. Rodriguez pumped on the brakes in an effort to warn the BMW that it was following too closely. After they exited, the BMW passed Rodriguez's car on the right and the driver glanced at them. A white four-door car driven by Martinez then drove up on the left side of Rodriguez's car. Martinez also looked at them and then passed them. Then both the white car and the BMW lined up together in front of Rodriguez's car and "brake checked" Rodriguez. The drivers in the two cars appeared to be having a conversation. The white car then slowed down, and lined up next to Rodriguez's car. Rodriguez and Martinez exchanged words, and then Ibarra heard shots fired and saw that Rodriguez had been hit by a bullet. The BMW and the white car took off, and Acosta managed to take the wheel and pull over Rodriguez's car. Ibarra called 911. As they were waiting for the ambulance to arrive, Ibarra noticed the drivers in the BMW and the white car appeared to be waiting and watching. Both cars exited the freeway as the ambulance approached. Rodriguez died from the gunshot wound.

Christopher Acosta testified that Rodriguez was exiting the freeway when a black BMW came up behind them flashing its lights. In response, Rodriguez began to pulse his brakes and flash his lights. When the exit divided into two lanes, the BMW passed Rodriguez's car on the right, and a Buick passed Rodriguez on the left. The Buick and the BMW then drove side by side in front of Rodriguez, causing Rodriguez to slow down. Acosta tried to tell the driver of the Buick to pull over so that they could fight. The next thing Acosta noticed was that Rodriguez had been shot. Acosta pulled the car over and Ibarra called 911.

Martinez's girlfriend at the time of the murder, Balbina Cardenas, testified that on the morning after the shooting, Martinez came to her house and rushed inside to look for a news report on the computer. Martinez wanted to tell Cardenas what happened the night before, but she did not want to hear about it. After Martinez and Cardenas dropped off her friend at school, Martinez told Cardenas that he and his brother had been racing when another car cut his brother off. Martinez, who told Cardenas that he "would do anything for his brother," then positioned his car to the left side of the other car and shot his gun through his car's rear passenger-side window.

Cardenas's friend, Stephanie Vasquez, was also at the house on the morning of December 14, 2011. When Martinez arrived, Vasquez overheard him tell Cardenas's sister that he and his brother were on the highway and another driver pushed his brother off the highway, and that Martinez "got mad so he stuck his arm out and shot." Vasquez testified that Martinez drove a white four-door Buick and that Martinez's brother, Bonifacio, drove a black BMW with butterfly doors.

Cardenas's sister, Jahaira Salazar, testified that on the morning of December 14, 2011, Martinez came to her house and got on the computer to look at the KSAT news website. Afterwards, Martinez told Salazar that the night before, he and his brother were racing on the highway when he got into an argument with another driver and he pulled up on the driver's side of that car and "just shot." Martinez was not sure whether or not anyone in the other car had died. Salazar contacted Crime Stoppers and Martinez was arrested that night.

The forensic evidence at trial showed that two shots were fired at the driver's side of Rodriguez's vehicle. One bullet pierced the exterior of the driver's side door and a 9 mm bullet fragment, which was embedded in the door panel, was recovered. The other 9 mm bullet went through the driver's side window, shattering it. A trajectory analysis revealed that the gunshots to the driver's side door and window came from the left with only a slight angle. A gunshot residue

(GSR) test showed that GSR was present on the upholstery, headliner, and dashboard of the white Buick. GSR was also present on Martinez's clothing.

### STANDARD OF REVIEW

The Texas Code of Criminal Procedure provides that, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CODE CRIM. PROC. ANN. art. 37.08 (West 2012). We apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should be given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). First, we determine if the proof necessary to establish the charged offense also includes the lesser offense. *Hall*, 225 S.W.3d at 535-36. If this threshold is met, we next consider whether the evidence shows that if the appellant is guilty, he is guilty only of the lesser offense. *Id.* at 536; *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002). Here, both parties correctly agree that manslaughter is a lesser-included offense of murder. *See Cavazos*, 382 S.W.3d at 384; *Girdy v. State*, 213 S.W.3d 315, 318 (Tex. Crim. App. 2006). We therefore proceed to the second prong of the *Aguilar/Rousseau* test.

Under this prong, we must consider whether there was some evidence raised at trial from which a rational jury could acquit Martinez of the greater offense of murder and convict him of the lesser-included offense of manslaughter. *Cavazos*, 382 S.W.3d at 385; *see also* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2012) (a person commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual); TEX. PENAL CODE ANN. § 19.04(a) (West 2012) (a person commits the offense of manslaughter if he recklessly causes the death of an individual). There must be some affirmative evidence that Martinez did not intend to cause serious bodily injury when he shot the

victim, as well as some affirmative evidence from which a rational juror could infer that Martinez was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of his conduct. *Cavazos*, 382 S.W.3d at 385. Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense. *Hall*, 225 S.W.3d at 536; *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985). However, the evidence produced must be sufficient to establish the lesser-included offense as a "valid, rational alternative" to the charged offense. *Hall*, 225 S.W.3d at 536 (citing *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative. *Forest*, 989 S.W.2d at 367. While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if the appellant is guilty, he is guilty only of the lesser-included offense. *Cavazos*, 382 S.W.3d at 385; *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003), abrogated on other grounds by *Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2011). Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Cavazos*, 382 S.W.3d at 385. Thus, for a manslaughter instruction to be proper here, some evidence would have to demonstrate affirmatively that Martinez was merely reckless when he killed Rodriguez and that he therefore lacked the mental state necessary for murder.

## DISCUSSION

Martinez claims he was entitled to the lesser-included-offense instruction on manslaughter because he only shot at the car and did not point the gun directly at anyone inside the car. He argues that he acted without animus toward any individual in the car, and therefore merely acted recklessly. We disagree.

Martinez insists that his statements to witnesses that he "shot at the car" constitute evidence of recklessness. Under a lesser-included-offense analysis, however, "fragments of testimony 'cannot be plucked out of the record and examined in a vacuum.'" *See Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). A review of the entire record demonstrates that Martinez acted with intent to seriously injure one or more of the occupants of Rodriguez's car. The record contains no affirmative evidence that Martinez only intended to shoot at the car, and not the occupants. To the contrary, the evidence shows that Martinez told several people that he was angry with the driver of the car for cutting off his brother, and that he would do anything for his brother. Further, Martinez intentionally positioned the Buick along the left side of Rodriguez's car and fired two shots in the direction of the driver's side of Rodriguez's car, knowing that Rodriguez was sitting just on the other side of the driver's door. Bullets can pass through cars, striking occupants sitting inside with lethal force. *See Moreno v. State*, No. 14-12-00095-CR, 2013 WL 3947164, at *6 (Tex. App.—Houston [14th Dist.] July 30, 2013, no pet.) (mem. op., not designated for publication). Thus, the jury could have inferred that Martinez intended to cause serious bodily injury to one or more of the car's occupants when he fired the gun twice directly at the driver's side.

After reviewing the entire record, we disagree that a rational jury could have found that Martinez lacked intent to cause serious bodily injury. The evidence does not support a finding of mere recklessness and does not rise to a level that would convince a rational jury to find that if Martinez is guilty, he is guilty of only the lesser-included offense. Without additional evidence directly germane to recklessness, Martinez's statement that he just shot at the car is insufficient to require an instruction on the lesser-included offense of manslaughter. Because the facts did not raise manslaughter as a valid, rational alternative to the charged offense, Martinez was not entitled to the requested jury instruction. *Cavazos*, 382 S.W.3d at 385-86.

## CONCLUSION

Because there was no evidence raised at trial that would permit a rational jury to find that, if Martinez is guilty, he is guilty only of manslaughter, the trial court did not err in refusing his requested jury instruction on the charge of manslaughter. Accordingly, we overrule Martinez's sole issue on appeal and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

DO NOT PUBLISH