**AFFIRM; and Opinion Filed July 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00940-CR

### DAMIAN MEDINA BUENO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F17-58187-I**

# MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Damian Medina Bueno appeals his conviction for aggravated assault with a deadly weapon.

In two issues, appellant asserts the trial court erred in allowing a lay witness to testify as to "legal

factual finding," and in denying his request for a jury charge on the lesser-included offense of

deadly conduct. We affirm the trial court's judgment. Because all issues are settled in law, we

issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

The State charged appellant by indictment with aggravated assault with a deadly weapon,

alleging appellant intentionally and knowingly threatened Yaneli Carrizales with imminent bodily

injury while displaying a firearm. The State also alleged that appellant and Carrizales were in a

dating relationship. Appellant entered a plea of not guilty and proceeded to jury trial.

Carrizales testified that she and her thirteen-year old daughter and six-year old son had been living with appellant for three months when the assault occurred. She explained that after appellant moved into her home he became increasing negative, stopped talking to her, would leave at times without a stated reason, and drank excessively. When she expressed to appellant that she wanted him to move out of her home, he refused. During the time Carrizales lived with appellant, he worked at a bar and typically came home around 2:30 a.m. On the night in question, Carrizales fell asleep and woke when she heard appellant's car pull into the driveway around 6 a.m. She went outside and found appellant asleep at the wheel with the car door ajar. After she woke appellant, an argument ensued between them and Carrizales told appellant that she was fed up with his excessive drinking. She told appellant she wanted him to move out. Appellant followed Carrizales into the house where the argument escalated. Appellant retrieved a gun from the bedroom closet and loaded it. In fear of her life and the lives of her children, Carrizales ran to her children's bedroom to protect them. Appellant followed and stood in the doorway holding the gun. Carrizales and her daughter begged appellant to put down the gun and Carrizales told him he was unduly scaring the children. Carrizales recalled that appellant pointed the gun at her. She believed appellant was going to hurt her and her children. She testified that appellant shot at the floor and that, at some point, appellant asked her if she thought he was playing and pointed the gun at her again. She indicated that during this ordeal appellant cursed at her and finally unloaded the bullets from the gun and let them fall to the floor. After appellant emptied the gun, Carrizales' daughter called the police. Carrizales and her children fled through the back door and met the police outside. They waited three to four hours before a SWAT team entered the house and retrieved appellant. On cross-examination, Carrizales confirmed that no physical harm came to her or her children.

Carrizales' daughter, J.G., testified that she awoke to Carrizales and appellant arguing. She recalled that when her mother entered her room, she looked scared. J.G. observed appellant with a gun in his hand. She testified that "[h]e was drunk and he was holding it towards my mom. He didn't have balance, his own body. It was like the gun was everywhere like towards us too." When asked to clarify exactly where appellant was pointing the gun, J.G. stated, "[a]t my mom but at us too [because] he didn't have balance his own body. When he was drunk he was [waving] the gun." She indicated that appellant turned around and shot at a wall. She stated that her brother was crying during the ordeal and that after appellant emptied the bullets onto the floor, he went to the kitchen, while she, her mother, and brother fled.

Officer Villar testified that most of the 9-1-1 calls he responds to are domestic disturbance calls. He indicated that typical domestic disturbance calls involve physical violence and it is rare to have a call involving a gun. On September 16, 2017, Officer Villar responded to a "6XE" call, meaning the situation had escalated to a point where someone's life is potentially at risk. Because shots were fired, he and another officer drew their weapons before approaching the house. He described the scene as pretty calm and stated that both officers believed they were at the wrong home until they encountered Carrizales and her children fleeing out the back door. He testified Carrizales and her children were terrified and upset and he tried to get them away from the house into a tree line where they would not be visible. Officer Villar stated several officers arrived at the scene, and ultimately SWAT was called to assist because appellant would not come out of the house. After deploying gas, "O.C" grenades, and a robot into the home, SWAT entered the home and retrieved appellant.

Detective Bazan testified that he had been with the Dallas Police Department for twenty-one years and collected evidence at the scene. During the investigation, he collected the firearm and two bullet fragments, and he documented a defect in the wall where the bullet struck. No

spent casings were located. Detective Bazan testified that the presence of two fragments could mean that the gun was fired twice or the bullet broke. He only discovered one bullet hole in the home. One bullet was found in the chamber of the gun and there were no bullets in the magazine.

Appellant testified he and Carrizales were coworkers who became close friends and eventually moved in with each other. They had a good relationship until Carrizales stopped working. Appellant acknowledged that he had a drinking problem and attributed it to the decline in his relationship with Carrizales. He claimed Carrizales continually questioned him about dating other women. On the night in question, he arrived home around 6:00 a.m. because he had been drinking after work. He claimed that when he arrived home, he went into the house and found Carrizales waiting for him. He indicated she began screaming at him, accused him of having been with another woman, and then took away his phone. He claimed that after Carrizales found a text message on his phone from another woman, she assaulted him. Appellant stated Carrizales' assault upset him so he went to the closet in the bedroom and grabbed the gun. Appellant acknowledged that he went to the children's room with the gun, but claimed he never pointed the weapon at Carrizales or the children. He testified that Carrizales and the children appeared to be nervous. After he fired the gun, he went to the kitchen to eat and saw Carrizales and the children leave. Appellant confirmed that he had control of his faculties, he was not flailing around, and that he shot the gun because he was angry. Appellant admitted that he is a convicted felon and is not legally allowed to possess a gun.

The jury found appellant guilty of the charged offense and assessed punishment at seven years' confinement. Appellant filed a motion for new trial. The motion was overruled by operation of law. This appeal followed.

## DISCUSSION

In his first issue, appellant urges the trial court erred in allowing Officer Villar to testify as to a "legal factual finding."  More particularly, appellant complains about the following exchange between the State and Officer Villar:

[Prosecutor]: Have you seen cases of aggravated assault deadly weapon gun cases?

[Officer Villar]: Yes.

Q: Is it possible to have an aggravated assault deadly weapon where the gun's not even shot off?

A: yes.

APPELLANT'S COUNSEL: Objection, it's a legal factual finding he can't make. He's not authorized to make.

PROSECUTOR: I'm asking his experience as on officer, Your honor.

THE COURT: I'll allow that.

A: Yeah, threats, you can threaten someone with a gun.

Q: That's still on offense, correct?

A: Correct.

Q: Even if no one's injured that's aggravated assault with deadly weapon, correct?

APPELLANT'S COUNSEL: Again he's making a finding of factual and a legal finding. I object to that response.

THE COURT: Overruled.

Q: You can answer.

A: Yes, you point a gun at someone, in their eyes they're thinking they're gonna die, you know.

Q: Okay. In this case through your investigation did you determine that a gun was shot off?

A: Yes.

Q: Safe to say this rose to a level of aggravated assault deadly weapon?

A: Absolutely yes.

Appellant claims that in overruling his objections to Officer Villar's testimony the trial court allowed a lay witness to testify as to a legal conclusion. A defendant must timely object each time the State offers inadmissible evidence unless the defendant obtains a running objection. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The overruling of an objection to evidence will not result in reversal when other like evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

Assuming in the first instance, without deciding, that the trial court erred in overruling appellant's objection to Officer Villar's testimony, appellant did not object to the ultimate question of whether this rose to the level of aggravated assault. Moreover, appellant did not object to the following testimony of Detective Bazan, which was substantially the same as the complained of testimony.

[Prosecutor]: Have you worked ag assaults before?

[Detective Bazan]: Yes

Q: In working those have you seen other cases where a gun was used?

A: Yes.

Q: Have you worked ag assaults where a gun's used but not shot off?

A: Yes, I have.

Q: Say that you are, you have a gun pointing at me doing nothing to deserve it, is that aggravated assault deadly weapon?

A: Could be, yes.

Q: Do you need to fire the weapon for it to be an offense?

A: No.

Q: Do I need to be injured for it to be on offense?

A: No.

Q: Do you need to actually say I'm going to kill you for it to be an offense?

A: No.

Q: You need to say I'm going to hurt you for it to be an offense?

A: No.

Accordingly, reversal on account of Officer Villar's testimony is not warranted. *See id.* We overrule appellant's first issue.

In his second issue, appellant contends that, in this case, misdemeanor deadly conduct is a lesser-included offense of aggravated assault and the trial court erred in denying his request for a deadly conduct instruction.

A trial court's decision to submit or deny a lesser-included offense instruction is reviewed for an abuse of discretion. *Treadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). We apply a two-step test to determine whether an instruction on a lesser-included offense should have been given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine if the proof necessary to establish the charged offense also includes the lesser offense. *Id.* If so, in the second step we review the record for some evidence that would permit a jury to rationally find that, if the appellant is guilty, he is guilty only of the lesser offense. *Id.* at 382.

Deadly conduct is a lesser-included offense of aggravated assault if (1) deadly conduct is established by proof of the same facts, or less than the same facts, than is required to establish appellant committed aggravated assault; (2) deadly conduct differs from aggravated conduct only in respect that a less serious injury or risk of injury exists; (3) deadly conduct differs from aggravated assault only in the respect that a less culpable mental state is required; or (4) deadly

conduct consists of an attempt to commit aggravated assault or an otherwise included offense. *See Ortiz v. State*, 144 S.W.3d 225, 231–32 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc) (citing TEX. CODE CRIM. PROC. ANN. art. 37.09)). Each definition of a lesser-included offense in article 37.09 of the code of criminal procedure is stated with reference to "the offense charged" and specifically states the manner in which the lesser-included offense differs from the offense charged. *Bell v. State*, 693 S.W.2d 434, 437 (Tex. Crim. App. 1985).

We first determine the elements of the offense as charged. *Campbell v. State*, 149 S.W.3d 149, 153 (Tex. Crim. App. 2004) (en banc). Appellant's indictment charged that he "unlawfully then and there intentionally and knowingly threaten[ed] YANELI CARRIZALES . . . with imminent bodily injury, and said defendant did use and exhibit a deadly weapon, to-wit: a FIREARM, during the commission of the assault . . . ." Therefore, appellant was charged with aggravated assault by use of a deadly weapon under section 22.02(a)(2) of the penal code. TEX. PENAL CODE ANN. § 22.02(a)(2). Accordingly, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly threatened Carrizales with imminent bodily injury by knowingly and intentionally using a deadly weapon.

We next look at the elements of deadly conduct, which appellant contends is a lesser-included offense. The penal code provides that a person commits the offense of deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." *Id.* § 22.05(a). Recklessness and danger are presumed when the actor "knowingly point[s] a firearm at or in the direction of another . . . ." *Id.* § 22.05(c). Reckless conduct is a lesser-included offense of the offense charged in the instant case because it is established by proof of the same facts required to establish the commission of aggravated assault by the use of a deadly weapon. *See Bell*, 693 S.W.2d at 439.

Merely because a lesser offense is included within the proof of a greater offense, however, does not always compel the submission a jury charge on the lesser offense. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). The remaining question is whether there is some evidence that appellant, if guilty, is guilty *only* of the lesser included offense of reckless conduct. *Campbell*, 149 S.W.3d at 152. Satisfying the second step "requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385.

Appellant contends that J.G., who was twelve years old at the time of trial, provided a scintilla of evidence that appellant might be guilty of deadly conduct only because she contradicted her mother on where appellant aimed when he fired the gun, testified appellant was drunk and flailing around and did not have control over the weapon, and admitted that appellant did not state that he was going to kill anyone or do harm. That testimony does not establish appellant acted recklessly rather than intentionally and knowingly. Moreover, based upon the entire record, and as discussed *infra*, we conclude a jury could not have rationally concluded that appellant, if guilty, was guilty of deadly conduct only.

In particular, Carrizales testified that appellant intentionally pointed the gun at her, J.G. testified appellant intentionally pointed the gun at everyone, and appellant himself stated that he retrieved the gun because he was angry at Carrizales, admitting he intended to retrieve the gun, he intended to load the gun, and intended to stop Carrizales' alleged assault of him. In addition, appellant admitted that he was in control of his actions at the time. Accordingly, we conclude there is no evidence from which a jury could rationally conclude appellant acted recklessly rather than intentionally. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

    /David J. Schenck/
    DAVID J. SCHENCK
    JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

180940F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAMIAN MEDINA BUENO, Appellant

No. 05-18-00940-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F17-58187-I.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of July, 2019.